## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **SHANNON LEIGH THORLEY,** )<br><br>)<br>**Plaintiff,** )<br><br>)<br>**v.** )<br><br>)<br>**MARTIN O'MALLEY, Commissioner**<br>**of the Social Security Administration,** )<br><br>)<br>**Defendant.** ) | **Case No. 22-cv-10884-DJC** |

## <u>MEMORANDUM AND ORDER</u>

**CASPER, J.**                                                    **March 28, 2024**

### I.      Introduction

Pursuant to the procedures set forth in the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3), Plaintiff Shannon Leigh Thorley ("Thorley") brings this action for judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"),[1] issued by an Administrative Law Judge ("ALJ") on March 2, 2021, denying her application for disability insurance benefits ("SSDI") and supplemental security income ("SSI") with the Social Security Administration ("SSA").  Thorley has moved to reverse and remand the decision of the Commissioner, D. 19, and the Commissioner has moved to affirm the decision.  D. 20.  For the reasons stated below, Thorley's motion to reverse and remand is DENIED, and the Commissioner's motion to affirm is ALLOWED.

_____

[1] Pursuant to Fed. R. Civ. P. 25(d), the Court substitutes the name of Martin O'Malley, the current Commissioner, as Defendant here.

II.     **Legal Standards**

A.     <u>**Entitlement to Disability Benefits and Supplemental Security Income**</u>

To receive SSDI and SSI benefits, a claimant must demonstrate that she is disabled, as defined by the Social Security Act (the "Act") and corresponding regulations.   42 U.S.C. § 423(a).   In this context, a disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than [twelve] months."   42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505.   The disability or disabilities must be so severe as to prevent a claimant from not only maintaining employment similar to previous work, but also from doing any substantial gainful activity which exists in the national economy.   42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505–404.1511.

The Commissioner must follow a five-step process to determine whether a claimant has a disability for Social Security purposes and, thus, whether to approve the claimant's application for benefits.   20 C.F.R. § 416.920(a).   If at any step in the process the Commissioner conclusively finds the claimant to be disabled or not disabled, then the inquiry ends.   <u>Id.</u> § 416.920(a)(4).   First, if the claimant is engaged in any substantial gainful activity, then the claimant is not disabled.   <u>Id.</u> § 416.920(a)(4)(i).   Second, if the claimant does not have, or has not had during the relevant time period, a severe, medically determinable physical or mental impairment or combination of impairments, then the claimant is not disabled.   <u>Id.</u> § 416.920(a)(4)(ii).   Third, if the impairment(s) meets or is medically equal to the conditions for one of the "listed" impairments in the Social Security regulations, then the claimant is disabled. <u>Id.</u> § 416.920(a)(4)(iii).   Fourth, if the claimant's "residual functional capacity" ("RFC") shows that the claimant can still perform past relevant work, then the claimant is not disabled.   <u>Id.</u> § 416.920(a)(4)(iv).   Fifth and finally, if the claimant's RFC, education, work experience, and

age show that the claimant is capable of any other work in the national economy, then the claimant is not disabled.  Id. § 416.920(a)(4)(v); see id. § 416.960(c).

### B.    Standard of Review

This Court may affirm, modify or reverse the decision of the Commissioner upon review of the pleadings and the record.  42 U.S.C. § 405(g).  Such review is limited to an evaluation of "whether there is substantial evidence to support the ALJ's fact findings and whether appropriate legal standards were employed."  Jones v. Soc. Sec. Admin., 150 Fed. Appx. 1, 1–2 (1st Cir. 2005) (citing Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999)).  Accordingly, the ALJ's findings of fact must be affirmed when supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Commissioner's] conclusion."  Rodriguez v. Sec'y of Health & Hum. Servs., 647 F.2d 218, 222 (1st Cir. 1981).  A denial of relief will not be upheld, however, where there has been an error of law.  See Manso-Pizarro v. Sec'y Health & Hum. Servs., 76 F.3d 15, 16 (1st Cir. 1996).  The district court reviews questions of law de novo. Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001).

### III.    Factual Background

### A.    Procedural History

Thorley claimed an inability to work since December 31, 2018.  R. 649.[2]  She was twenty-nine years old as of the alleged onset date.  R. 24, 649.  The record indicates that Thorley applied for SSDI on August 27, 2019, and applied for SSI on September 3, 2019.  R. 649, 651. She alleged impairments including Gardner Diamond Syndrome, fibromyalgia, mood disorder,

---

[2] Citations to the administrative record in this case shall be to "R. ___."

post-traumatic stress disorder ("PTSD"), attention deficit disorder ("ADD"),[3] neuropathy, muscle inflammation, chronic constipation, chronic multifactorial pain and functional restriction and shortness of breath.  R. 499.    SSA denied the application on November 14, 2019.  R. 566-71. On January 7, 2020, Thorley requested reconsideration of the initial denial.  R. 572-73.  The SSA concluded that the denial was proper and informed her of same on April 27, 2020.  R. 574-79.

On June 7, 2020, Thorley requested a hearing before an ALJ.  R. 580-81.  On March 2, 2021, after a hearing, an ALJ issued a written decision concluding that Thorley was not disabled. R. 8-26.  Thorley appealed the decision to the Social Security's Appeals Council ("AC").  R. 41-42.  The AC denied the request for review, rendering the ALJ's decision the final decision of the Commissioner.  R. 1-4.  Thorley filed the instant lawsuit against the Commissioner, D. 1, and now moves this Court for an order reversing and remanding the Commissioner's final decision. D. 19.  The Commissioner has moved for an order affirming same.  D. 20.

**B.    <u>Before the ALJ</u>**

The record before the ALJ included the following:  (1) testimony at the ALJ hearing; (2) Thorley's medical records; and (3) state agency expert assessments of Thorley's RFC.

*1.    Testimony at the ALJ Hearing*

Thorley testified before the ALJ at the hearing on October 20, 2020.  R. 449.  She discussed her education, work history, social support, financial circumstances and familial and living situation.  R. 457-85.  When asked why she felt that that she was unable to perform not only her past relevant work but any other work, Thorley testified that she is "mentally unfit," unable to physically stand or sit for long periods of time due to excruciating pain, and not

---

[3] Thorley listed "ADD" as one of her alleged impairments in her application for SSDI and SSI. R. 499, 515, her medical records address attention deficit hyperactivity disorder ("ADHD"), not ADD.

"mentally able to perform any duties that have a time restraint" or that make her think.  R. 473-74.  The ALJ then asked Thorley about her mental health, and Thorley testified that her mental health problems became "crippling" around 2018.  R. 474-75.  When asked about the treatments she had received, Thorley mentioned that she was in therapy and currently awaiting a placement in a program to treat her bipolar disorder.  R. 475.  Thorley explained that the treatment for her psychiatric conditions have not been successful and testified that she had stopped taking her prescribed medications two weeks prior because they were making her physically sick.  R. 476, 478.  She had previously been taking Gabapentin, Lamictal, Ativan, Adderall, Atenolol, Vitamin D3, Cromolyn Sodium and Effexor.  R. 477.

As to her physical conditions, Thorley testified that she had post-orthostatic hypotension syndrome, mast cell activation syndrome and Ehlers-Danlos syndrome ("EDS").  R. 477.  She attested that her geneticist believes that she has EDS but given that her blood tests did not show the genes that are typically found in the EDS spectrum, there is not sufficient genetic evidence to show that she has the condition.  R. 478.  Thorley described that walking up and down stairs was "excruciating" because her hips would really hurt.  R. 479.

Upon examination by her attorney, Thorley testified that her connective tissue disorder makes it painful for her to sit for more than five to ten minutes and to stand for more than ten minutes.  R. 485-86.  Thorley described that standing for too long causes "pain to radiate from [her] feet all the way to [her] shoulders," R. 485, and sitting for too long creates "complete numbness and tingling pain that goes from [her] toes all the way up to [her] shoulders."  R. 486.  She further testified that her post-orthostatic hypotension syndrome causes dizziness, nausea, headaches and the inability to regulate temperature.  R. 487.  Thorley mentioned that her gastronomical problems, namely her chronic constipation, do not themselves affect her ability to

work but the resulting pain does.  R. 489.  Following the examination by her attorney, the ALJ inquired about Thorley's skin condition.  R. 490.  Thorley clarified that the skin condition is undiagnosed and that she was not currently receiving treatment for it.  Id.

The ALJ also took the testimony of vocational expert Steven Sachs ("Sachs").  R. 491-96.  Sachs testified about Thorley's prior work as a counter attendant, cashier, cosmetologist, accounting clerk and administrative clerk.  R. 492.  He testified that Thorley's work as a counter attendant, cashier, cosmetologist and administrative clerk required light exertion and that her job as an accounting clerk required sedentary exertion.  Id.  The ALJ then asked a series of hypotheticals to discern whether individuals with RFCs comparable to Thorley's functional capacity could perform Thorley's past work and whether there would be other jobs in the national economy that could be performed by such hypothetical individuals.  R. 493-496.  Sachs testified that someone with Thorley's RFC could not perform Thorley's past work but that there are other jobs in the national economy that she could alternatively perform.  R. 494-96.

### 2.    Thorley's Medical Records

In addition to Thorley's testimony, the ALJ considered her medical records.[4]  According to these records, Thorley has been diagnosed with fibromyalgia.  R. 1076.  She described feeling longstanding chronic pain and joint ache "all over."  R. 1076, 1490, 1510.  Her rheumatologist, Dr. Michael York ("Dr. York"), noted that the joint examination he conducted was normal except for signs of hypermobility, and he observed that she was "diffusely tender at multiple fibromyalgia tenderpoints."  R. 1076, 1480, 1663.  Regarding Thorley's fibromyalgia, Dr. York saw no signs of inflammatory arthritis, no focal findings and no association between the condition and the skin lesions detected on Thorley.  R. 1077.  Dr. York described that Thorley's

---

[4] The Court limits this summary to the medical records relating to fibromyalgia as that is the condition pertinent to the issues raised in Thorley's request for judicial review.  D. 19 at 5.

pain is "worse with physical activity of any type," R. 1663, but noted that she had "no functional issues." R. 1665. A physical examination conducted by Dr. Michael Perloff noted that Thorley's motor strength was "5/5 throughout," as she had "[s]trong hand intrinsics" and could "rise from chair without arms." R. 1590. The examination also showed that Thorley had a normal steady narrow gait and could walk on her toes and heels. Id.

Thorley described feeling pain "all her life" and could not remember ever feeling pain free. R. 1478. Thorley reported experiencing an increase in pain over time. R. 1478, 1669, 1737. She described swelling of her hands and palms and knots in her lower back. R. 1478. On at least one occasion, Thorley rated the severity of her pain as "9/10" and reported trouble concentrating because of the pain and poor sleep. R. 1478. Thorley expressed that she has been unable to work or drive because of the pain. R. 1737, 1490. Thorley has tried taking Gabapentin and nonsteroidal anti-inflammatory drugs, and she has tried massage therapy and physical therapy but did not find any of these helpful in alleviating her pain. R. 1485. Her physical therapy records, however, reveal that Thorley confirmed feeling "improvement in symptoms when she leaves [physical therapy] that averages about 2-3 days. She states that walking was greatly improved . . . to the point where she could walk her dog." R. 2497. She also reported an improvement in posture. R. 2503. The physical therapy records indicate that Thorley has "displayed improvement in her strength . . . which has likely contributed to reports of increased ease of walking." R. 2507.

Thorley also experiences pain associated with a connective tissue disorder. R. 259, 329, 2246, 2250. She described feeling this pain throughout her spine, shoulders and hips, and she observed that it occasionally radiates down her legs. R. 2246. Thorley reported feeling this pain mostly when sitting and described not being able to sit for a long period of time without

developing pain in her lower extremities.  Id.  A medical practitioner from the Center for Human Genetics found that Thorley's "overall presentation [was] consistent with a connective tissue disorder within the Ehlers-Danlos syndrome spectrum."  R. 1544.  A physical exam, however, revealed that Thorley did not meet the diagnostic criteria for EDS.  R. 1631-32.

The medical records showed that Thorley struggled with several dermatological issues, including skin lesions, hyperpigmentation and bruising.  R. 1500-02.  The medical notes indicated that there was "no evidence of vasculitis," "no clear obvious skin pathology that would explain her symptoms" and no evidence of a primary skin disease.  R. 1500.  As to the bruising, the medical exams showed no evidence of "an underlying hematologic or oncologic process."  R. 1527.  The medical reports attributed the observed skin ulcerations and lesions to scratching or picking.  R. 1044, 1535, 1964.  Progress notes from South Bay Mental Health note that Thorley reported picking at her skin.  R. 1280-81.

Thorley was diagnosed with Gardner Diamond Syndrome, but the provider specified that this was "a diagnosis of exclusion" and would need "records from her hematologist for completeness."  R. 1427-28.  Her medical history included diagnoses of asthma, chronic constipation, anxiety, depression, mood disorder, ADHD, neuropathy and headaches, among many other things. R. 1058, 1082, 1157-58, 1581-82.  Treatment notes indicated that Thorley "is clearly depressed" and has experienced interruptions in psychiatric care and difficulty getting therapy.  R. 2008, 1474.  Progress notes from her therapist indicated that Thorley felt emotional pain due to the loss of her business and financial difficulties.  R. 1296-98.  Thorley reported "uncontrollable" anxiety with panic attacks occurring once a week.  R. 1308.

### 3.    State Agency Expert Assessments

The ALJ considered state agency expert assessments of Thorley's functional limits.  The state agency expert assessments consisted of two sets of examiners, one for Thorley's initial

application request and one of her reconsideration request.  The initial expert assessment concluded that Thorley has a severe physical medically determinable impairment, R. 504, and certain exertional limitations, R. 506-07.  It, however, found that while Thorley "has serious health concerns, she is not more than mildly limited" in mental health, R. 505, concluding that Thorley's psychiatric impairments were not severe, R. 504.  The second expert assessment agreed with the initial assessment's conclusion that Thorley has a severe physical medically determinable impairment, R. 531-32, but disagreed that the mental impairments were not severe, R. 532, but "she is not more than mildly limited in [mental health] and does not meet or equal any [mental health] listing." R. 533.

C.  **The ALJ's Decision**

Following the five-step process to evaluate whether a claimant is disabled, 20 C.F.R. § 416.920, at step one, the ALJ found that Thorley had engaged in substantial gainful activity from January 2019 through June 2019, R. 13, but found that Thorley had not engaged in substantial gainful activity since June 2019.  R. 14.  At step two, the ALJ found that Thorley had the following severe impairments:  fibromyalgia, unspecified connective tissue disorder, asthma, depressive disorder, anxiety disorder and attention deficit hyperactivity disorder ("ADHD").  R. 14.  At step three, the ALJ found that Thorley did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in the Social Security regulations requiring a finding of disability.  R. 15.  Thorley disputes that her fibromyalgia is not medically equivalent to one of the listed impairments.  D. 19 at 12.  Before proceeding to step four, the ALJ determined that Thorley has the RFC to "perform light work" with certain limitations:

> she can lift and/or carry 20 pounds occasionally and 10 pounds frequently; can stand and/or walk for six hours in an eight hour workday over a forty hour workweek; can sit for six hours in an eight hour workday over a forty hour

workweek; would need a sit/stand option being defined as after sitting for one hour she must be able to change position or stand for up to five minutes during which time she would remain on task; can occasionally climb stairs and ramps but never ropes, ladders or scaffolds; can occasionally balance, stoop, crouch, kneel and crawl; must avoid concentrated exposure to unprotected heights and moving and dangerous machinery; however, could operate a motor vehicle; would have to avoid concentrated exposure to pulmonary irritants; would be able to understand and carry out instructions for simple routine tasks and maintain concentration, persistence, and pace in the performance of these tasks for two hour increments over an eight hour workday, during a forty hour workweek.

R. 17.  At step four, the ALJ found that Thorley was unable to perform any past relevant work.

R. 24.  At step five, the ALJ determined that given Thorley's age, education, work experience and RFC, "there are other jobs that exist in significant numbers in the national economy" that Thorley can perform."  R. 24.

## IV.   Discussion

Thorley seeks reversal of the ALJ's decision and that the case be remanded for further proceedings.  D. 19 at 21.  Thorley contends that the ALJ erred by (1) failing to consider whether her fibromyalgia was medically equivalent to inflammatory arthritis as listed in 14.09D of 20 C.F.R. Part 404, Subpart P, Appendix 1, id. at 10-17 and (2) failing to evaluate the supportability and consistency of Dr. York's opinion as to Thorley's physical limitations, namely his statement that Thorley's pain is "worse with physical activity of any type."  Id. at 17-21; R. 1663.

### A.   ALJ's Consideration of Thorley's Fibromyalgia at Step Three

Thorley contends that the ALJ erred by failing to consider whether her fibromyalgia was medically equivalent to listing 14.09D, in violation of Social Security Ruling ("SSR") 12-2P. D. 19 at 10.  As part of step three, the ALJ must determine whether a claimant's impairment meets or is medically equal to the conditions for one of the "listed" impairments in 20 C.F.R.

Part 404, Subpart P, Appendix 1 (a "Listing").[5]  20 C.F.R. § 416.920(a)(4)(iii).  If the ALJ finds that claimant's impairment meets or is medically equal to a Listing, a finding of disability is directed without consideration of "age, education, and work experience."  20 C.F.R. § 416.920(d).

Thorley suggests that SSR 12-2p requires that the ALJ evaluate whether fibromyalgia is medically equal to Listing 14.09D.  D. 19 at 19 at 13.  SSR 12-2p, however, does not impose such requirement.  Rather, SSR 12-2p requires that the ALJ analyze whether fibromyalgia is medically equal to a listing and identifies 14.09D as an example.  SSR 12-2p, at *6; see Cano v. Saul, No. 1:19-cv-11563-ADB, 2020 WL 1877876, at *12 (D. Mass. Apr. 15, 2020) (describing that the "ALJ need[s] to consider *some* listing with reference to fibromyalgia at step three").

Thorley disputes whether the ALJ analyzed her fibromyalgia at step three.  Thorley argues that the ALJ only considered and discussed other severe impairments but failed to mention or analyze her fibromyalgia.  D. 19 at 12.  There is disagreement among courts as to the level of detail the ALJ must provide when explaining whether the claimant's severe impairments meet or equal a Listing.  Lopez Davila v. Berryhill, No. 17-12212-ADB, 2018 WL 6704772, at *14 (D. Mass. Nov. 6, 2018), report and recommendation adopted, No. 17-cv-12212-ADB, 2018 WL 6499862 (D. Mass. Dec. 11, 2018).  "The First Circuit does not appear to have addressed this issue, and the courts in this district have not yet reached a consensus."  Id.  Some courts have remanded for an ALJ to evaluate the evidence and explain his conclusion where "some of the evidence indicates that [claimant] may have met a listing."  Id. at *16; see Cano, 2020 WL

---

[5] The parties do not dispute that fibromyalgia is not a listed impairment in Appendix 1.  D. 19 at 10; D. 21 at 4.  Instead, Thorley argues that the ALJ should have considered whether her fibromyalgia equals a listing "or whether it medically equals a listing in combination with at least one other medically determinable impairment."  D. 19 at 10 (citing SSR 12-2p, 2012 WL 3104869 (July 25, 2012)).

1877876, at *12 (stating that "[a]t minimum . . . an ALJ must compare a claimant's fibromyalgia to a listing at step three"). Other courts have focused on whether the ALJ's step three conclusion is supported by substantial evidence. See Rivera v. Barnhart, No. 04-30131-KPN, 2005 WL 670538, at *5 (D. Mass. Mar. 14, 2005) (stating that "the failure—if failure it is—to make specific findings as to whether a claimant's impairment meets the requirements of a listed impairment is an insufficient reason in and of itself for setting aside an administrative finding . . . Rather, the focus must be on whether there exists substantial evidence for the step three decision"); see also Arrington v. Colvin, 216 F. Supp. 3d 217, 233 (D. Mass. Nov. 3, 2016) (declining to remand where "a remand for further explanation or analysis at step three would amount to nothing more than an empty exercise"), aff'd, No. 17-1047, 2018 WL 818044, at *1 (1st Cir. Feb. 5, 2018).

The ALJ found that Thorley "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." R. 15. Such conclusion can be reasonably interpreted as applying to fibromyalgia, particularly where it is not a listed impairment. The discussion specifically mentioned Thorley's asthma and mental impairments. R. 15. The ALJ also noted that Thorley's "conditions do not meet or equal Listing 14.06 (undifferentiated and mixed connective tissue disease)." R. 15. Although this listing was directed at her connective tissue disease, much of the analysis of same applies to fibromyalgia, id., as discussed further below.

That is, both the ALJ's analysis of Listing 14.06 and subsequent discussion of Thorley's RFC show that remand on whether fibromyalgia is equivalent to a listing would be an "empty exercise." SSR 17-2p provides:

> Generally, a statement that the individual's impairment does not medically equal a listed impairment constitutes sufficient articulation for this finding. An

adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3.

SSR 17-2p, 2017 WL 3928306, at *4 (Mar. 27, 2017).

>    *1.*    *The ALJ's Discussion of Listing 14.06 Provides Relevant Rationale*

The ALJ's analysis of Listing 14.06 provides the relevant rationale for his conclusion that Thorley does not meet or equal a listing, including Listing 14.09D (which is the listing upon which Thorley relies as a basis for reversal and remand, D. 19 at 10-15; D. 21 at 5).   Listing 14.09D requires:

> Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>
>> 1. Limitation of activities of daily living.
>> 2. Limitation in maintaining social functioning
>> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.09(D); see Pabon Mercado v. Commissioner of Soc. Security, No. 19-1843-MEL, 2021 WL 123381, at *5 (D.P.R. Mar. 31, 2021) (declining to remand where "[w]hile the ALJ did not discuss Listing 14.09(D), Plaintiff has not cited to record evidence showing that she suffers from two of the constitutional symptoms or the required marked limitation").   Like Listing 14.09D, Listing 14.06 requires at least two of the same constitutional symptoms or signs and at least one of the same stated limitations at the marked level.   20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.06(B).   The ALJ concluded that Thorley's conditions did not meet Listing 14.06 because there was no evidence of "repeated manifestations of undifferentiated or mixed connective tissue disease, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level: limitation of activities of daily living, limitation in maintaining

social functioning, or limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace."  R. 15.  Although the ALJ evaluated the relevant criteria, namely whether Thorley showed at least two of the constitutional symptoms or signs and one of the stated limitations at the marked level, under Listing 14.06, it follows that, having not satisfied such criteria, the ALJ could not have concluded that Thorley's fibromyalgia equaled Listing 14.09D.

2.       *The ALJ's Discussion of Thorley's RFC Provides Relevant Rationale*

Moreover, the ALJ's analysis of Thorley's RFC also provides the relevant rationale for his step three conclusion.  In the RFC analysis, the ALJ acknowledged that "the claimant experiences some significant limitations as a result of her severe impairments," but concluded that "the record does not support the presence of symptoms of the intensity, persistence, and limiting effects described during [Thorley's] testimony."  R. 18.  In reaching this conclusion, the ALJ first described Thorley's allegations:

> She has alleged limitations in her ability to perform activities of daily living as a result of her conditions, and that she was limited in her social abilities, ability to pay attention, and ability to handle stress. She has further reported that she is unable to sit or stand long enough to prepare her own meals or complete chores around the house, that she rarely drove due to pain, and that she could not handle money without the help of her boyfriend. She indicated that her ability to function at all during the day depended on her pain tolerance, and that her physical limitations could be made worse by weather and other factors.

R. 18.  The ALJ then considered the rest of the evidence in the record and concluded that Thorley's description of the "intensity, persistence, and limiting effects of these symptoms [was] not entirely consistent with the medical evidence and other evidence in the record."  R. 18.  The ALJ noted that during one medical visit, a medical provider found that "there were no signs of inflammatory arthritis," and Thorley "showed no focal tenderness, and a normal joint examination with no hypermobility.  She could move her shoulders the full range of motion with

14

tenderness but no swelling."  R. 19, 1414.  Notes from other visits indicated that while Thorley described feeling pain, physicians conducting physical exams found that Thorley exhibited "normal motor strength," "normal movement of all extremities" with some tenderness, full range of motion and no hypermobility.  R. 19, 1161, 1170, 1490.  The ALJ cited a physical therapy visit in March 2020, where Thorley indicated that she was "independent in activities of daily living and self-care and in indoor and outdoor mobility."  R. 21, 2298.

Although the ALJ made these findings later in the sequence of the disability determination, the discussion "provide[s] rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3."  SSR 17-2p, at *2.  Specifically, as it may relate to Listing 14.09D, there was substantial evidence for the ALJ to conclude that Thorley does not experience limitations of activities of daily living, maintaining social functioning or completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace at the marked level, as required for a finding of this medical equivalence.

In addition to the evidence identified by the ALJ, other evidence in the record supports the conclusion that Thorley does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  For instance, the initial state agency expert assessment found that while Thorley "does have a severe physical [medically determinable impairment]," "she does not meet or equal a listing based on physical findings and objective testing."  R. 504.  The state agency examiners for the reconsideration request found that the "[s]everity of [Thorley's] subjective complaints and how they affect function are not supported by objective physical findings, extensive testing, or imaging."  R. 534.  Dr. York, Thorley's rheumatologist, indicated that Thorley had "no functional issues."  R. 1665.  That is, there is no other evidence in the record to suggest that Thorley is disabled based upon a medical

equivalence at step 3.  SSR 17-2p, at *3; <u>see</u> <u>Sierra S. v. Kijakazi</u>, No. 1:23-cv-00241-NT, 2023 WL 8946685, at *2 (D. Me. Dec. 28, 2023), <u>report and recommendation adopted</u>, No. 1:23-cv-00241-NT, 2024 WL 216680 (D. Me. Jan. 19, 2024).

For all of these reasons, the ALJ did not err in its conclusion that Thorley did not have any impairment or combination of impairments that met or medically equaled any of the listings for step 3.

**B.      The ALJ's Assessment of Dr. York's Opinion**

Thorley contends that that ALJ erred by improperly evaluating and not crediting Dr. York's opinion concerning Thorley's physical limitations.  D. 19 at 18.  Dr. York, a rheumatologist, completed an arthritis and rheumatology questionnaire, where when asked about mechanical factors which incite and relieve pain, indicated that Thorley's pain is "worse with physical activity of any type."  R. 1663.    Dr. York also observed that Thorley experienced "diffuse tenderness" and "widespread pain," but noted that the joint exam was "normal . . . except for signs of hypermobility."  <u>Id.</u>  Dr. York's testing, which included an antinuclear antibody ("ANA") test and a C-Reactive Protein ("CRP") test, showed "negative" or "normal" results, and he observed a negative rheumatoid factor and negative Sjogren's serologies.  <u>Id.</u>  Dr. York found no hematological issues.  R. 1664.  As to Thorley's benign hypermobility, Dr. York's laboratory findings were "all normal," and he indicated that Thorley had "no functional issues."  R. 1665.  Dr. York noted that he had no medical or surgical plans for further treatment of Thorley's benign hypermobility.  <u>Id.</u>  The ALJ found Dr. York's findings "generally persuasive, as they [were] based on objective test results," but found Dr. York's statement that Thorley's pain is "worse with physical activity of any type," R. 1663, to be "less persuasive" because it "appear[ed] to be based on the claimant's subjective reports."  R. 23.

Thorley claims that the ALJ failed to evaluate the supportability and consistency of Dr. York's statement that Thorley's pain is worse with physical activity of any type.  D. 19 at 18. ALJs must consider several factors in determining the persuasiveness of a particular medical opinion:  (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization and (5) other factors.  See 20 C.F.R. § 404.1520c(c).  "The most important factors to be considered when the Commissioner evaluates persuasiveness are supportability and consistency; these are usually the only factors the ALJ is required to articulate."  Harrison v. Saul, No. 20-10295-LTS, 2021 WL 1153028, at *5 (D. Mass. Mar. 26, 2021) (internal citation and quotation marks omitted).  The ALJ may discount a medical opinion or attribute more weight to one opinion than another.  Maclean v. Saul, No. 20-10519-NMG, 2021 WL 7451167, at *6 (D. Mass. Apr. 27, 2021).  The ALJ's decision does reflect an evaluation of the supportability and consistency of Dr. York's opinion regarding Thorley's functional limitations.

*1.     The ALJ Properly Evaluated the Supportability of Dr. York's Opinion*

Under the supportability analysis, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions."  20 C.F.R. § 404.1520c(c)(1).  The ALJ described the medical examinations that Dr. York relied upon in his medical findings.  For example, the ALJ noted that Dr. York conducted a joint examination which showed that the examination was "normal except of signs of hypermobility," that Thorley "had no difficulty with grasping or fine manipulation" and that "there was mild fact hypertrophy."  R. 23.  The ALJ also noted that based on other testing, Dr. York found that "ANA and rheumatoid factor were negative," that Thorley's laboratory test results "were all normal," and that Thorley had "no hematological disorder."  Id.  Dr. York thus concluded that Thorley "had no functional

limitations."  Id.  The ALJ found that these findings were "generally persuasive" because they were supported by "objective test results."  Id.

Thorley argues that it was improper for the ALJ to reject Dr. York's statement concerning Thorley's pain increasing with activity merely because it was based on Thorley's subjective reports.  D. 19 at 19.  Thorley relies upon Johnson v. Astrue, 597 F.3d 409 (1st Cir. 2009), where the court reversed the ALJ's decision to give "little weight" to the medical opinion of claimant's rheumatologist where the rheumatologist relied upon claimant's subjective allegations.  Id. at 412.  This case, however, is distinguishable from Johnson because Johnson concerns "the standards for *diagnosing* fibromyalgia, whereas this case involves determining whether plaintiff's diagnosed fibromyalgia was disabling."  Smith v. Berryhill, 370 F. Supp. 3d 282, 291 (D. Mass. 2019) (emphasis in original); Coe v. Colvin, No. 15-30037-MGM, 2016 WL 3350995, at *7 (D. Mass. June 15, 2016) (explaining that in Johnson, "the administrative law judge erred by 'requiring objective evidence beyond the clinical findings necessary for a *diagnosis* of fibromyalgia under established medical guidelines'") (emphasis in original).

Here, the ALJ found that Thorley's fibromyalgia was a severe impairment, R. 14, and acknowledged that Thorley "experiences some significant limitations as a result" of her fibromyalgia, R. 18.  See Smith, 370 F. Supp. 3d at 290 (distinguishing Johnson where "the ALJ did not reject Plaintiff's statements of pain" and found that plaintiff's fibromyalgia was a severe impairment but "questioned the limitations resulting from the pain"); Coe, 2016 WL 3350995, at *7 (distinguishing Johnson where "the ALJ accepted the diagnosis of fibromyalgia and explicitly considered it in determining Plaintiff's RFC").  "Although objective evidence is not required to support a *diagnosis* of fibromyalgia, 'objective medical evidence is a useful indicator to assist the administrative law judge in making reasonable conclusions about the intensity and

persistence of an individual's symptoms and effects those symptoms may have on the individual's ability to function.'" Coe, 2016 WL 3350995, at *7 (emphasis in original) (quoting Brown v. Colvin, 111 F. Supp. 3d 89, 99 (D. Mass. 2015)). Rather than discounting Thorley's allegations of pain or rejecting her diagnosis of fibromyalgia based on lack of objective evidence showing same, the ALJ instead found that Dr. York's statement relying upon Thorley's subjective reports was insufficient to support a finding that Thorley experiences limitations to the extent that Thorley suggests. R. 18, 23; see Sanchez v. Berryhill, No. 3:18-cv-30084-KAR, 2019 WL 2437265, at *12 (D. Mass. June 10, 2019) (noting that "[t]he SSA acknowledges that fibromyalgia may be a disabling condition, but requires sufficient objective evidence to support a finding that this impairment so limits a claimant's functional abilities that it precludes him or her from working") (internal citation and quotation marks omitted). It was, therefore, appropriate for the ALJ to consider the lack of objective evidence supporting Dr. York's statement regarding Thorley's increased pain with any activity in the evaluation of Thorley's functional limitations.

2.      *The ALJ Properly Evaluated the Consistency of Dr. York's Opinion*

Under the consistency factor, the ALJ must consider whether an opinion is consistent with the record as a whole. Perrino v. Kijakazi, No. 21-cv-11267-ADB, 2023 WL 2743370, at *7 (D. Mass. Mar. 31, 2023); 20 C.F.R. § 404.1520c(c)(2) (stating that "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be"). Although the ALJ does not explicitly declare that he is engaging in the consistency analysis, it is clear from the immediate prior discussion that Dr. York's statement about increased join pain with activity is "less persuasive" because it is inconsistent with Dr. York's other objective findings, namely that Thorley had no functional limitations as demonstrated by medical examinations and laboratory tests. R. 23. A finding that Thorley is

limited in her activities due to pain is also unsupported by the other evidence in the record.  See Perrino, 2023 WL 2743370, at *8 (concluding that although the consistency discussion was "minimal," the ALJ properly evaluated the consistency of the medical opinion where he found that the opinion was inconsistent with the medical expert's own treatment notes and inconsistent with other evidence in the record).

### 3.   Thorley Has Not Shown that Any Alleged Error was Harmful Error

Even assuming *arguendo* that the ALJ should have credited Dr. York's statement, Thorley fails to show that the error was harmful.  Thorley claims that "a proper evaluation of Dr. York's opinion may have led the ALJ to conclude that Plaintiff is not capable of sustained gainful employment at any exertional level and is therefore disabled."  D. 19 at 20-21. Thorley's speculation about the potential effect that crediting the opinion could have on the disability determination is not sufficient to show that the error is harmful.  Williams v. Colvin, No. 2:13-cv-00125-JAW, 2014 WL 220744, at *2 (D. Me. Jan. 21, 2014) (noting that the standard for harmful error is not the mere possibility that excluded evidence could affect the decision).

Accordingly, the ALJ properly evaluated Dr. York's medical opinion and there was no error warranting reversal or remand.

## V.   Conclusion

For the reasons stated, Thorley's motion to reverse and remand, D. 19, is DENIED, and the Commissioner's motion to affirm, D. 20, is ALLOWED.

**So Ordered.**

/s Denise J. Casper
United States District Judge